**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lee Gentry, | No. CV-20-01533-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff Lee Gentry's ("Plaintiff") application for disability insurance benefits. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") decision (Doc. 13-3 at 26–41), as upheld by the Appeals Council, *id.* at 2–4.

**BACKGROUND**

Plaintiff is a former stamper, construction laborer, and telephone solicitor. Plaintiff alleges disability beginning on December 1, 2016 ("onset date"). *Id.* at 29. His claim was denied initially on May 17, 2017, and upon reconsideration on November 7, 2017. *Id.* On August 9, 2019 the ALJ denied Plaintiff's Application, and on June 18, 2020, the Appeals Council denied Plaintiff's Request for Review. *Id.* at 2, 26.

The ALJ evaluated Plaintiff's disability based on the following severe impairments: clotting disorder; pulmonary embolism; recent aneurism; seizure disorder; and mental

health impairments including depression, bipolar disorder, post-traumatic stress disorder, and schizophrenia. *Id.* at 32. Ultimately, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 C.F.R. 416.967(b) except: The [Plaintiff] is limited to occasional use of lower extremities for foot controls. He is able to occasionally climb ramps and stairs but should never climb ladders, ropes, or scaffolds. He is able to occasionally stoop, crouch, crawl, and kneel; he is able to frequently balance. He should avoid all exposure to moving machinery and unprotected heights. The [Plaintiff] requires a job that could be performed while sitting or standing throughout the workday (allowing ability to shift positions). The [Plaintiff] is able to perform simple, routine, repetitive tasks and he is limited to occasional interaction with public and coworkers.

*Id.* at 35. Accordingly, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 40–41.

## DISCUSSION

### I.    Legal Standards

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*,

278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe," medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II.     Analysis**

Plaintiff argues that the ALJ erred by (1) finding Plaintiff partially credible and failing to account for all of his symptom testimony; and (2) declining to appropriately limit Plaintiff's work contact with others in light of Dr. Margaret Friedman's testimony. (Doc. 14 at 1.) The Court will address each of Plaintiff's arguments in turn.

**A. Plaintiff's Symptom and Work-Related Capacity Testimony**

Because the severity of an impairment may be greater than what can be shown by objective medical evidence alone, the ALJ considers a claimant's subjective testimony regarding pain and symptoms. 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The claimant, however, must still show objective medical evidence of an underlying impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a). However, while such evidence is required to show the existence of an underlying impairment, "the [ALJ] may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Nevertheless, the ALJ evaluates the testimony in relation to the objective medical evidence and other evidence in determining the extent to which the pain or symptoms affect her capacity to perform basic work activities. 20 C.F.R. § 404.1529(c)(4).

Unless there is evidence of malingering by the claimant, the ALJ may only reject symptom testimony for reasons that are specific, clear, and convincing. *Burch*, 400 F.3d at 680. In evaluating the credibility of a claimant's testimony, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997); *see* 20 C.F.R. § 404.1529(c)(4).

The Ninth Circuit has made clear that if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). But an ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as he "make[s] specific findings justifying his decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least "provide some reasoning in order [for a reviewing court] to meaningfully determine whether [the ALJ's] conclusions were supported by substantial evidence." *Id.* at 495.

Here, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony about his physical symptoms. The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 13-3 at 36.) Specifically, although the ALJ acknowledges that Plaintiff suffers from a clotting disorder, she notes that Plaintiff's past noncompliance with his prescribed medical regimens contributed to the severity of his symptoms. *Id.* at 37 (citing Ex. B37F). Although Plaintiff asserts that the ALJ did not properly consider Plaintiff's allegation that these behaviors were caused by medication side-effects, the ALJ specifically acknowledged medical testimony that his noncompliance could be due to either nausea from his medication or "uncontrolled psychiatric illness," and pointed out that Plaintiff provided another explanation in his testimony about his difficulty swallowing pills. (Doc. 13-3 at 37) (citing B37F at 13); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ also noted that the same practitioner observed that Plaintiff's "unusual presentation" and symptoms "cannot be physically explained" and appeared to have a psychosomatic source. (Doc. 13-3 at 37) (citing B37F at 4). Finally, the ALJ reasoned that Plaintiff's past activities, such as working in a phone bank and volunteering at his church, and the fact that he has previously shown improvement with physical therapy, weigh against crediting Plaintiff's account of the seriousness of his symptoms. *Id.* at 36–37 (citing Ex. B31F, B38F). Taken together, this reasoning constitutes specific, clear, and convincing reasons for discounting the Plaintiff's testimony about his physical symptoms, including his assertion that he must raise his legs for at least two hours of the workday.

These findings also specifically contradict Plaintiff's testimony regarding the

severity of his mental illness. The ALJ reasoned that his past work and volunteering, as well as his caretaking roll for his disabled wife, show a level of interactive ability greater than Plaintiff's testimony. Because the ALJ found Plaintiff's testimony concerning the severity of his conditions lacked credibility for several reasons, the ALJ was free to discount Plaintiff's subjective statements, even though some of Plaintiff's statements may have been supported by other evidence in the record. *See Thomas*, 278 F.3d at 960. In light of the above support, the Court also finds that the ALJ did not pick isolated instances of improvement, and did not err in finding that Plaintiff's records, overall, are inconsistent with his testimony. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [A court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

### B. Testimony of Margaret Friedman, PsyD

In formulating the RFC, the ALJ evaluates all medical opinions in the record and assigns a weight to each. 20 C.F.R. §§ 404.1527(b)–(c). "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The weight the ALJ gives an opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)– (c)(6). The ALJ may assign lesser weight to a controverted opinion of a treating physician, as is the case here, if the ALJ articulates "specific and legitimate reasons supported by substantial evidence." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (internal quotation omitted). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v.*

*Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ gave "great weight" to the conclusion of state agency consultant Margaret Friedman, PsyD. (Doc 13-3 at 38.) Dr. Friedman concluded that Plaintiff could perform simple and repetitive tasks with casual and infrequent contact with supervisors and coworkers and no direct contact with the public. *Id.* (citing Ex. B5A at 22.) The ALJ found Plaintiff capable of performing "simple, routine, repetitive tasks" with "limited to occasional interaction with public and coworkers." *Id.* at 39. Plaintiff alleges the ALJ did not properly support this departure from Dr. Friedman's finding that no public contact was appropriate. The ALJ's opinion, however, clearly evaluates Plaintiff's mental impairments and specifies that her analysis of Plaintiff's RFC reflects her Paragraph B evaluation of Plaintiff's mental function. In Paragraph B, the ALJ concluded that Plaintiff had "at least some ability to relate to others and successfully relate to supervisors, coworkers, and public." (Doc. 13-3 at 33.) She supported this conclusion with evidence of Plaintiff's conduct: that he interacted normally with treating practitioners and presented as cooperative and in no distress, that he went out in public, and that he lived with his spouse without serious problems. *Id.* This reasoning provides a detailed explanation of the facts conflicting with Dr. Friedman's clinical conclusions and amounts to specific and legitimate reasons, supported by substantial evidence, for the ALJ's conclusion.

## CONCLUSION

For the reasons stated above, the Court finds that the ALJ's opinion was supported by substantial evidence in the record and was free from harmful legal error.

**IT IS THEREFORE ORDERED** affirming the August 9, 2019 decision of the Administrative Law Judge, as upheld by the Appeals Council on June 18, 2020 (Doc. 13-3.)

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 5th day of August, 2021.

_____
G. Murray Snow
Chief United States District Judge